**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NUMBER: 09-23370-CIV-SEITZ/O'SULLIVAN**

RAYMOND YOUNG and
PAULA YOUNG,

      Plaintiffs,

v.

LEXINGTON INSURANCE COMPANY,

      Defendant.

_____/

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO MERLIN LAW**
**GROUP'S CHARGING LIEN AND MOTION TO ENFORCE CHARGING LIEN**

      Plaintiffs, RAYMOND YOUNG and PAULA YOUNG ("the Youngs"), by and through

undersigned counsel, file this Memorandum in Response to Merlin Law Group's Charging Lien

and Motion to Enforce Charging Lien, and state as follows:

**I. INTRODUCTION**

      Merlin Law Group, P.A. and its attorneys represented the Youngs in the instant case,

however, the Youngs lost trust and faith in that firm and its attorneys and discharged them for

cause.  Upon discharge, Merlin Law Group, P.A. filed a Charging Lien seeking $144,024.51 in

alleged attorney's fees and costs.  For the reasons outlined below, Plaintiffs request that Merlin

Law Group, P.A.'s Charging Lien be reduced to $6,067.66, or in the alternative, to $34,870.66.[1]

**II.  FACTUAL AND PROCEDURAL BACKGROUND**

      On or about August 18, 2008, Tropical Storm Fay caused damage to property owned by

_____

[1] Both figures assume Merlin Law Group, P.A. can provide documentation to support the alleged
costs, which it has failed to do thus far.

the Youngs.  At the time of the loss, that property was insured by Defendant, Lexington Insurance Company ("Lexington").

The Youngs hired Merlin Law Group, P.A. to handle their claim against Lexington.  The subject retainer agreement[2] was signed by the parties on September 10, 2009.[3] See retainer agreement (entitled "Authority to Represent Insurance Claims") attached as Exhibit "A."

On October 1, 2009, Michelle Claverol, an attorney from Merlin Law Group, P.A., filed a lawsuit against Lexington on behalf of the Youngs.  **At the time the Complaint was filed, Ms.**

_____

[2] The retainer states in pertinent part:

### I.   RESPONSIBILITY TO PAY LAWYERS' FEE

**A.   Lawyer's Fees:**

*      *      *

If CLIENT accepts a settlement without the LAWYERS' consent, then CLIENT will pay from the gross recovery, or otherwise, an attorney's fee based upon the reasonable hours spent on this matter at an agreed hourly rate of $550.00/hour for partner attorneys, $450 to $350/hour for associate attorneys, and $125.00 to $100/hour for paralegals.

*      *      *

### II.   RESPONSIBILITY FOR COSTS AND EXPENSES

**A.   Advanced Costs:**

The CLIENT understands and acknowledges that certain costs will be required to be incurred in the prosecution of the claim and any related litigation.  CLIENT expressly authorizes the LAWYERS to advance such costs as are reasonable and necessary for the prosecution of this matter.  In the event of recovery, such advanced costs are to be paid from any recovery, after reduction of the amount gross recovery by the attorney's fees due.

*      *      *

[3] Although the retainer was signed on September 10, 2009, the Merlin Law Group, P.A. began billing the Youngs on August 18, 2009 (and is seeking payment for such work).

**Claverol had been licensed to practice law in Florida for only approximately 3 years, and had been a lawyer for approximately 4.5 years.**

Approximately one (1) month later, Lexington removed the case to the United States District Court for the Southern District of Florida.  Thereafter, Ms. Claverol and counsel for Lexington held an initial scheduling conference, pursuant to Court order and Federal Rules of Civil Procedure 16 and 26, to formulate a scheduling plan and otherwise agree on deadlines for the case.  As a result of that conference, the parties filed a Joint Scheduling Report [D.E. 7], which outlined the agreed dates for the disclosure for experts.  Pursuant to the agreement between the parties as outlined in the Joint Scheduling Report, the deadline for Plaintiffs to disclose their experts was July 16, 2010.[4]  That deadline was ratified by the Court when it issued its Scheduling Order [D.E. 9].[5]

Despite the fact that the deadline to disclose expert witnesses is one of the most important deadlines in a federal court case, July 16, 2010 (the deadline for Plaintiffs to disclose their expert witnesses) came and went with no such disclosure made on behalf of the Plaintiffs.

One month later, Defendant made its expert disclosures.  That surely should have should have put Ms. Claverol on notice that the Youngs' expert disclosures were overdue by a month as it is well known in federal court practice that the disclosure of a defendant's experts typically occurs one (1) month after the plaintiff discloses his, her, or its experts.  Perhaps the mistake could have been caught at that point if there was another attorney of record for the Youngs from

---

[4] Ms. Claverol was well aware of that date not only because it was agreed upon by her and opposing counsel, but because she reviewed and calendared that date herself.  That fact is confirmed by her time entries, wherein she claims to have spent over an hour reviewing the Joint Scheduling Report and calendaring the dates (the latter of which is typically handled by a legal assistant or paralegal).

[5] Ms. Claverol was aware of this fact, which is confirmed by her time entries which represent that she spent almost an hour and a half to review the Scheduling Order issued by the Judge – which interestingly, was only four (4) pages long.

Merlin Law Group, P.A.  However and despite the fact that in Florida younger attorneys are typically paired as counsel of record with older and more experienced attorneys, Ms. Claverol remained the sole attorney of record for more than a year.[6]

Unfortunately, it was not until approximately 3 months after the expiration of the Plaintiffs' expert witness disclosure deadline that Ms. Claverol made such disclosure on behalf of the Youngs.  That disclosure invited the Court to strike such experts as it was: (i) approximately 3 months delinquent; (ii) made without first seeking leave of court;[7] (iii) made after the deadline had passed for filing *Daubert* motions; and (iv) made approximately 3 weeks before the deadline for the cutoff of all discovery.  Moreover and perhaps most importantly, the disclosure was not in compliance with Federal Rule of Civil Procedure 26.

**Plaintiffs' disclosures were subsequently stricken by the Court.**  Instead of taking other action to preserve Plaintiffs' claim, Ms. Claverol sought (without justification) reconsideration from the Court on the issue.[8]  **The relief requested was denied by the Court, thus confirming that the Youngs were doomed to proceed to trial the following spring without experts to prove their case by testifying as to causation, damages, etc.**  Making matters even worse is that in the time it took to effectuate these wasted efforts, Defendant moved

---

[6] According to the timesheets provided by the Merlin Law Group, P.A. it appears as though Ms. Claverol had very little supervision in the handling of this case until several critical mistakes were made.

[7] Although Ms. Claverol filed a motion entitled "Plaintiffs' Motion for Leave to Amend Pleadings and to Enlarge Time to Serve Expert Witness Disclosure and Conduct Discovery and Memorandum of Law In Support Thereof," nothing (facts, legal support, etc.) in that Motion addressed the proposed leave to file expert witness disclosures after the deadline.  It should be noted that Ms. Claverol's effort to amend the Complaint was also untimely.

[8] The justification provided by Ms. Claverol to this Court for the failure to make Plaintiffs' expert witness disclosures was that her "assistant deleted without her permission" the deadlines that were placed on her calendar (by her assistant) from the Joint Scheduling Report when the Scheduling Order was later issued by the Court.  What is interesting about that assertion is that according to Merlin Law Group, P.A.'s timesheets, Ms. Claverol calendared the dates from the Joint Scheduling report herself.

4

for summary judgment.

In any event, the first the Youngs were told of the breach of the expert witness disclosure deadline was in late October 2010 – and even then, it was not fully explained to them that a mistake had been made that could materially affect the outcome of their case.  Instead of approaching the Youngs at that point to discuss the mistake and explore a possible strategy to remedy it, Ms. Claverol and Merlin Law Group, P.A. without permission from the Youngs and with no indication from the Court that Plaintiffs' experts would be permitted to testify, continued to incur costs associated with experts (all of which would later be excluded).[9]  **Those costs and others eventually exceeded $50,000.00.**

As a result of these actions and/or inactions and others of Merlin Law Group, P.A. and its attorneys and/or staff, the Youngs lost trust and confidence in their attorneys.  Consequently, the Youngs requested that Merlin Law Group, P.A. and its attorneys resign, and hired new counsel (the undersigned), thus effectively discharging Merlin Law Group, P.A. for cause.[10]  Shortly thereafter and because their experts had been stricken, the Youngs were essentially forced to settle their case and claims against Lexington.

Thereafter, Michelle Claverol filed a Notice of Charging Lien, Merlin Law Group's Motion to Enforce Charging Lien, and Affidavit of Michelle Claverol, Esquire In Support of Plaintiffs' Motion for Attorney's Fees and Reasonable Costs.[11]

---

[9] Ms. Claverol and the Merlin Law Group, P.A. also billed substantial attorney time to attempt to remedy the mistakes that were made by them – which could have been avoided altogether if the case had been handled properly.

[10] Such discharge occurred on December 8, 2010.

[11] Ms. Claverol's Affidavit references and was offered in support of "Plaintiffs' Motion for Attorney's Fees and Reasonable Costs," however, the undersigned has no knowledge of that Motion.  It is believed that Ms. Claverol and/or Merlin Law Group, P.A. has mistakenly referred to Merlin Law Group's Motion to Enforce Charging Lien as Plaintiffs' Motion for Attorney's Fees and Reasonable Costs.

On December 23, 2010, Michelle Claverol provided the undersigned with Merlin Law Group, P.A.'s timesheets and outline of costs for this matter. See timesheets and outline of costs attached as Exhibit "B." The attorney's fees totaled $77,139.50, and the costs totaled $62,478.86. Merlin Law Group, P.A. now seeks fees totaling $81,472.00, and costs totaling $62,552.51. See D.E. 80, entitled Affidavit of Michelle Claverol, Esquire In Support of Plaintiffs' Motion for Attorney's Fees and Reasonable Costs. Despite that fact, Merlin Law Group, P.A. has not filed its timesheets outlining the claimed $81,472.00 in attorney's fees or any documentation (other than Ms. Claverol's Affidavit) proving it expended or is obligated to pay the claimed $62,552.51 in costs on behalf of the Plaintiffs.

### III. LEGAL AUTHORITY

#### A. CHARGING LIEN STANDARD

"Federal courts, although they recognize no common-law lien in favor of attorneys, give effect to the laws of the states in which they are held." State Contracting & Engineering Corp. v. Condotte America, Inc., No. 97-7014-CV, 2004 WL 5500705, at *14 and 15 (S.D. Fla. 2004). "Under Florida's common law, a charging lien may be utilized to enforce the equitable right of attorneys to have costs and fees owed for legal services secured by the judgment or recovery in a lawsuit." Id. "To impose a charging lien, a court in equity must find: (1) an express or implied contract between the attorney and client; (2) an express or implied understanding that payment is either contingent upon recovery or will be paid from the recovery; (3) an attempt by the client to avoid paying or a dispute as to the amount of the fee; and (4) a timely notice of a request for a lien." Id.

It should be noted that "[a]ll proceedings in Florida to resolve an attorney's charging lien for legal services are equitable in nature." Thus equitable defenses may be asserted. Id.

6

### B. PROPER BASIS FOR COMPENSATION OF ATTORNEY DISCHARGED FOR CAUSE

"A client has great latitude in discharging his or her attorney . . . " <u>Pippin v. Playboy Entertainment Group, Inc.</u>, No. 802CV2329T17EAJ, 2006 WL 213851, at * 13 (M.D. Fla. 2006); Comment to 4-1.16, Florida Rules Regulating the Bar.  "Almost any good faith reason asserted by the client may constitute cause to discharge an attorney, from conduct which causes a client to lose faith in the attorney to an attorney's attempts to extort a new fee agreement during intense, high-stakes settlement negotiations." <u>Pippin</u>, 2006 WL 213851, at * 13.

**"[T]he proper basis for compensating an attorney discharged for cause is, 'the quantum meruit value of the services rendered less any damages which the client incurred due to the attorney's conduct and discharge.'"** <u>Kushner v. Engelberg, Cantor & Leone, P.A.</u>, 750 So. 2d 33 (Fla. 4th DCA 1999). [Empasis added].  However, "there can be no award of fees which is in excess of the contract rate." <u>Flynn v. Sarasota County Public Hosp. Bd.</u>, 169 F. Supp. 2d 1363 (M.D. Fla. 2001).

In determining the amount of the quantum meruit award, the court must consider all relevant factors surrounding the professional relationship to ensure that the award is fair to both the attorney and client. <u>Kushner</u>, 750 So.2d at 35.  Factors to be considered include, but are not limited to: (1) the actual value of the services to the client; (2) the time reasonably devoted to the representation; (3) a reasonable hourly rate; and (4) those factors listed in Rule 4-1.5(b) of the Florida Rules of Professional Conduct. <u>Id.</u> at 35 and 36.  It should be noted that one of the factors listed in Rule 4-1.5(b) of the Florida Rules of Professional Conduct is **"the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature."** Rule 4-1.5(b)(1)(C) of the Florida Rules of Professional Conduct. [Emphasis added].  Two other factors include "the results obtained," and "the experience, reputation, diligence, and ability of

the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services." Rules 4-1.5(b)(1)(D) and (G) of the Florida Rules of Professional Conduct.

## IV. ARGUMENT

### A.  ATTORNEY'S FEES

Although this Court must consider many factors, Plaintiffs believe the most important factors for it to consider are the following: (1) the fees customarily charged in south Florida for similar legal services; (2) the time expended; (3) the experience, diligence, and ability of the attorneys previously representing the Youngs; and (4) the results (or lack thereof) obtained by such attorneys.[12]  Based on those factors and others, the fees and costs being requested by Merlin Law Group, P.A. are clearly excessive and should be reduced significantly as more specifically described below, and as outlined in Exhibit "C."

### 1.  REDUCTION FOR EXCESSIVE HOURLY RATE

"With respect to the issue of hourly rates, the Court 'is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.'" Duval v. Law Office of Andreu, Palma & Andreu, PL, No. 09-22636, 2010 WL 2771859, at * 2 (S.D. Fla. 2010); Orenshteyn v. Citrix Systems, Inc., 558 F. Supp. 2d 1251, 1256 (S.D. Fla. 2008)(holding that the Court "is deemed an expert on the issue of hourly rates in its community . . . "). **Citation to prior precedent showing reasonable rate adjudications may be used to demonstrate proof of prevailing market rates,** as can affidavits of other attorneys or experts.

---

[12] It is important to note that this case involved a first party insurance property claim, which although involved a significant amount in dispute (in excess of $1 million), it did not involve issues that were overly complex.

Duval, 2010 WL 2771859, at * 2. [Emphasis added].

Pursuant to the Affidavit of Michelle Claverol, Esquire In Support of Plaintiffs' Motion for Attorney's Fees and Reasonable Costs, Merlin Law Group, P.A. claims that the following 4 attorneys (along with the following 3 legal assistants) worked on behalf of the Youngs in this case.

### a. MARY FORTSON ("MANAGING ATTORNEY")

According to The Florida Bar, Mary Fortson[13] was admitted to the bar on September 25, 1997.  According to the timesheets previously provided by Merlin Law Group, P.A., Ms. Fortson did not get involved in this matter until approximately 3 months before Merlin Law Group, P.A. was discharged.  At that time, Ms. Fortson had been practicing law for approximately 13 years.

Merlin Law Group, P.A. is seeking an hourly rate of $450.00 for Ms. Fortson.  Although Ms. Fortson's time should be reduced for other reasons discussed below, at the very least, her hourly rate should be reduced so that it is consistent with comparable local rates. See Duval v. Law Office of Andreu, Palma & Andreu, PL, No. 09-22636, 2010 WL 2771859, at * 2 (S.D. Fla. 2010)(finding that a reasonable hourly rate for an attorney with 17 years of experience was $300 dollars per hour); Vantage View, Inc. v. QBE Ins. Corp., No. 07-61038, 2010 WL 3746089, at * 12 (S.D. Fla. 2010)(finding that the prevailing rate for an attorney with 10 years of experience was $275 per hour, and for an attorney with 18 years of experience was $350 per hour).  Based on these recent decisions of this Court (both of which are less than 1 year old, and one of which (Vantage View, Inc.) is similar to this case as it also involved a first party property insurance claim), it is proposed that Ms. Fortson's hourly rate be reduced by $140.00 per hour to the more reasonable rate of $310.00 per hour.

---

[13] In Merlin Law Group, P.A.'s timesheets (attached as Exhibit "B"), Ms. Fortson is referred to as "Mary E. Kestenbaum."

If the Court agrees with this proposed reduction in hourly rate, Ms. Fortson's fees (based on 12 claimed billable hours) should be $3,720.00.   If the Court also agrees with the other proposed reductions for Ms. Fortson (as more fully described below for: (a) providing no support for 4 of the 12 hours she claims to have billed; (b) spending 1.8 hours attempting to correct mistakes made by Merlin Law Group, P.A. and/or dealing with experts which were excluded through the fault of Merlin Law Group, P.A.; and (c) billing .5 of an hour to the Youngs after the Merlin Law Group, P.A. was discharged), **her fees would total $1,767.00.**

### b.  JEAN F. NIVEN ("SENIOR ASSOCIATE")

Plaintiffs do not object to Ms. Niven's hourly rate, however and as discussed below, it is believed Ms. Niven's time should be reduced for other reasons.

If the Court agrees with the proposed reduction for Ms. Niven (as more fully described below for spending 1.9 hours attempting to correct mistakes made by Merlin Law Group, P.A. and/or dealing with experts which were excluded through the fault of Merlin Law Group, P.A.), **her fees would total $3,780.00.**

### c.  MICHELLE CLAVEROL ("JUNIOR ASSOCIATE")

Ms. Claverol is a **junior associate** at Merlin Law Group, P.A.  She was admitted to the Puerto Rico Bar on February 16, 2005 and the Florida Bar on July 18, 2006.  At the time she first began working on this case, she was an attorney with approximately 4.5 years of experience. When Merlin Law Group, P.A. was discharged, she had a little more than 5.5 years of experience.[14]

---

[14] In her Affidavit, Ms. Claverol states that she has "litigated, or participated in the litigation, of cases in state and federal courts of the United States for over 6 years." Affidavit of Michelle Claverol, Esquire In Support of Plaintiffs' Motion for Attorney's Fees and Reasonable Costs, ¶ 5.   However, unless she participated in such litigation as a law student, that statement is misleading as at the time the she filed her Affidavit she had been a lawyer for less than 6 years.

Despite Ms. Claverol's modest experience level and the errors she committed in the handling of this case, Merlin Law Group, P.A. is seeking an hourly rate of $400.00 per hour for her work.  This rate is clearly excessive, especially when compared to the amount determined to be reasonable by this Court for an attorney with **40 years** of experience in <u>Vantage View, Inc.</u> In that case (a case of a similar nature to the instant case), the Court awarded $500.00 per hour (only $100.00 more than the amount being sought by Ms. Claverol) to a senior attorney, who had been a past President of the Florida Bar and is "widely considered to be one of the best and most highly respected lawyers in the [south Florida] community in the subject areas of real estate and commercial litigation." <u>Vantage View, Inc. v. QBE Ins. Corp.</u>, No. 07-61038, 2010 WL 3746089, at * 13 (S.D. Fla. 2010).

Other cases decided by this Court provide further guidance and show that the hourly rate sought by Ms. Claverol is completely inconsistent with the prevailing local rate for her level of experience. <u>See</u> <u>Orenshteyn v. Citrix Systems, Inc.</u>, 558 F. Supp. 2d 1251, 1256 (S.D. Fla. 2008)(applying the reasonable rates of $200.00 per hour for **Junior Associates** and $220.00 per hour for Mid-level Associates in the South Florida legal community); <u>Lil' Joe Wein Music, Inc. v. Jackson</u>, No. 06-20079, 2008 WL 2688117, at * 10 (S.D. Fla. 2008)(**holding that the local Miami market rate for an associate with 4 years of experience is $200.00 per hour**); <u>Vantage View, Inc. v. QBE Ins. Corp.</u>, No. 07-61038, 2010 WL 3746089, at * X (S.D. Fla. 2010)(finding that the prevailing rate for an attorney with 5 years of experience was $250.00 per hour).

Consequently, based on her limited experience, lack of diligence, and the errors made by her, Plaintiffs seek to reduce Ms. Claverol's hourly rate from $400.00 per hour to $200.00 per hour.

If the Court agrees with this proposed reduction in hourly rate, Ms. Claverol's fees (based

on 168.68 claimed billable hours) should be $33,736.00.  If the Court also agrees with the other proposed reductions for Ms. Claverol (as more fully described below for: (a) charging 2.1 hours to the Youngs before the Merlin Law Group, P.A. was retained; (b) spending 39.3 hours attempting to correct mistakes made by Merlin Law Group, P.A. and/or dealing with experts which were excluded through the fault of Merlin Law Group, P.A.; and (c) charging 3 hours for work not associated with this case), **her fees would total $23,256.00.**

### d.  JEREMY F. TYLER ("JUNIOR ASSOCIATE")

Jeremy F. Tyler is a **junior associate** at Merlin Law Group, P.A.  He was first admitted to the Florida Bar on April 13, 2010.  **At the time he undertook work on this case, he had only been an attorney for 6 months.**  Plaintiffs believe Mr. Tyler's time should be deleted in its entirety for the reasons noted below, however, at the very least, his hourly rate should be reduced from $200.00 per hour,[15] to at most, $175.00 per hour, which is more consistent with local prevailing rates. See Vantage View, Inc. v. QBE Ins. Corp., No. 07-61038, 2010 WL 3746089, at * 14 (S.D. Fla. 2010)(finding that the prevailing rate for an attorney with approximately 4 months of experience was $175 per hour).

If the Court agrees with this proposed reduction in hourly rate, Mr. Tyler's fees (based on 32.2 claimed billable hours) should be $5,635.00.  If the Court also agrees with the other proposed reductions for Mr. Tyler (as more fully described below for: (a) providing no support for 12.6 of the 32.2 hours he claims to have billed; and (b) spending 19.6 hours attempting to correct mistakes made by Merlin Law Group, P.A. and/or dealing with experts which were

---

[15] It is important to note that the hourly rate charged for Mr. Tyler in Merlin Law Group, P.A.'s timesheets is $200.00 per hour.  However, in the Affidavit of Michelle Claverol, Esquire In Support of Plaintiffs' Motion for Attorney's Fees and Reasonable Costs, Mr. Tyler's billing rate is stated at $400.00.  It is unknown whether this was a scrivener's error or an attempt to inflate the attorney's fees, but the effect seems harmless as the total amount charged for Mr. Tyler appears to be based on a rate of $200.00 per hour.

excluded through the fault of Merlin Law Group, P.A.), **no fees would be due for his work.**

### e. ANN B. HORAN ("LEGAL ASSISTANT"), JOCELYN ENGRACIO ("LEGAL ASSISTANT"), AND TAMMY BEACH ("LEGAL ASSISTANT")

Ms. Horan, Ms. Engracio, and Ms. Beach's time should be deleted in its entirety (as discussed below), however, at the very least, their time should be reduced so that it is consistent with what is charged for this locality.  In the "Affidavit of Michelle Claverol, Esquire In Support of Plaintiffs' Motion for Attorney's Fees and Reasonable Costs," Ms. Claverol refers to Ms. Horan,[16] Ms. Engracio, and Ms. Beach as a "Legal Assistants," however, Merlin Law Group, P.A. is billing them at a rate in excess of the established fee charged for paralegals in the local area. See Flagstar Bank, FSB v. Hochstadt, No. 08-80795, 2010 WL 1226112, at * 5  (S.D. Fla. 2010)(finding that the prevailing rate for a paralegal in the Southern District of Florida is $100.00 per hour).  As such, the hourly rates for these **Legal Assistants** should be reduced to no more than $75.00 per hour.

If the Court agrees with this proposed reduction in hourly rate, Ms. Horan, Ms. Engracio, and Ms. Beach's fees (based on 5.8 claimed billable hours) should be $435.00.  If the Court also agrees with the other proposed reduction for Ms. Horan, Ms. Engracio, and Ms. Beach (as more fully described below for charging legal assistant fees which were not agreed to in the subject retainer between Merlin Law Group, P.A. and the Youngs), **no fees would be due for Ms. Horan, Ms. Engracio, and Ms. Beach's work.** See Flynn, 169 F. Supp. 2d at 1370.

---

[16] In Merlin Law Group, P.A.'s timesheets (attached as Exhibit "B"), Ms. Horan is referred to as a "Paralegal."   For the purposes of this Memorandum, Plaintiffs will assume she is a Legal Assistant as that is how she is referred to in Ms. Claverol's Affidavit, which was filed with the Court, and because that document was created after the timesheets were created.  If Ms. Horan is considered a Paralegal, Plaintiffs believe her hourly rate should be no more than $100.00. See Flagstar Bank, FSB, 2010 WL 1226112, at * 5.

## 2.  REDUCTION FOR EXCESSIVE TIME

Based on the vague time entry descriptions on Merlin Law Group, P.A.'s timesheets, it is difficult to determine whether most of such entries are excessive.  However, certain entries make it clear that excessive time was spent on some tasks.  Examples of those entries are provided below.  While it may seem that some of these examples are minimal in nature, it is important to remember that Merlin Law Group, P.A. is seeking $400.00 per hour for such time, which accumulates ever so quickly.

One example of excessive billing occurred on November 5, 2009, where Ms. Claverol charged a minimum of 3.1 hours reviewing the documents associated with Defendant's removal.[17]  The corresponding charges are $1,240.00.  A majority of the documents associated with Defendant's removal were the same ones filed by Ms. Claverol to initiate the instant lawsuit in state court.  In fact, a review of the removal documents shows only seven (7) substantive pages, all of which are elementary in nature and would certainly not take any more than .4 of an hour to review.  Consequently, it is requested that the subject time entries be reduced from 3.1 hours to .4 of an hour.

Another example can be found on November 25, 2009, where Ms. Claverol billed .4 of an hour for "Review of Election to Jurisdiction by U.S. Magistrate."  The simple forms associated with this task (common in every federal case) are two (2) pages long, and would take no more than .1 of an hour to review.  Thus, Ms. Claverol's time should be reduced accordingly by another .3 of an hour.

A similar example can be found on March 3, 2010, where Ms. Claverol billed .3 of an hour to review an email from this Court confirming the mediator who was selected, in part, by

---

[17]  The time associated with these efforts are contained in the first and third time entries on November 5, 2009.

Ms. Claverol herself.  That entry should be billed at no more than .1 of an hour, thus reducing Ms. Claverol's time by another .2 of an hour.

One final example can be found on February 17, 2010, where Ms. Claverol billed 1.3 hours to review the Order Setting Trial Date, Pretrial Deadlines and Referral to Magistrate, which is a 4 page document with few, if any, complexities.  That document should have taken no more than .4 of an hour to review and should be reduced accordingly (by another .9 of an hour).

These proposed reductions to Ms. Claverol's time total 4.1 hours.

### 3.  REDUCTION FOR TIME BILLED BEFORE MERLIN LAW GROUP, P.A. WAS RETAINED AND AFTER IT WAS DISCHARGED

Based on Merlin Law Group, P.A.'s timesheets (attached as Exhibit "B"), it appears that Merlin Law Group, P.A. is seeking fees for time expended before it was retained by the Youngs and after it was discharged by them.  The subject retainer was executed by the Youngs on September 10, 2009.  Merlin Law Group, P.A.'s timesheets show three (3) billing entries prior to that time, which total $840.00 (based on 2.1 hours billed by Ms. Claverol).

Likewise, Merlin Law Group, P.A. was discharged by the Youngs on December 8, 2010, however, it appears to be seeking fees for time expended after that time (two time entries on December 14, 2010), which total $262.50 (based on .3 of an hour billed by Ms. Horan and .5 of an hour billed by Ms. Fortson)).  Such fees should be deducted from the amount being sought by Merlin Law Group, P.A. via its Charging Lien.

### 4.  REDUCTION FOR TIME NOT ASSOCIATED WITH CASE

Merlin Law Group, P.A.'s timesheets contains an entry on June 22, 2010 which states: "Attendance at hearing on Defendant's Motion to Compel Better Answers to Discovery, including travel time."  The undersigned is unable to find any evidence that Defendant filed a motion to compel in this case, or that a hearing occurred, or that an order was entered regarding

the outcome of the issue.  As such, the $1,200.00 fee (based on 3 hours billed by Ms. Claverol) charged for this event should be deleted.

### 5.  REDUCTION FOR FEES ASSOCIATED WITH NEGOTIATING AMOUNT OF FEES SOUGHT BY MERLIN LAW GROUP, P.A.

It is believed that attorney Mary Fortson charged as many as 4 hours for time related to negotiations or otherwise regarding the *amount* of fees sought by Merlin Law Group, P.A. in this matter.  It is impossible to confirm this, however, because **Merlin Law Group, P.A. did not file any timesheets in support of its Charging lien.**  In any event, Plaintiffs believe any such time spent by Ms. Fortson in this regard should be deleted entirely because they are not recoverable pursuant to Florida law. See North Dade Church of God, Inc. v. JM Statewide, Inc., 851 So. 2d 194, 196 (Fla. 3rd DCA 2003).

### 6. REDUCTION FOR MISTAKES MADE BY MERLIN LAW GROUP, P.A., AND ITS ATTORNEYS AND/OR STAFF

### a.  FEES ASSOCIATED WITH ATTEMPTING TO REMEDY ATTORNEY MISTAKES AND THOSE ASSOCIATED WITH PLAINTIFFS' EXPERTS

As described above, Ms. Claverol and/or Merlin Law Group, P.A. failed to: (1) timely (and properly) disclose Plaintiffs' experts; (2) amend Plaintiffs' Complaint before the deadline to do so passed; and (3) take other action to preserve Plaintiffs' claims.  All of these mistakes resulted in Plaintiffs' experts being stricken and Merlin Law Group, P.A. having to expend significant attorney time to attempt to remedy the mistakes (none of which were remedied) and to defend against a Motion for Partial Summary Judgment that likely would not have been filed but for the mistakes made by Ms. Claverol and/or Merlin Law Group, P.A.

It is the Plaintiffs' position that they should not be charged attorney's fees for efforts by Merlin Law Group, P.A. and its attorneys and staff to remedy their own mistakes.  **In other words, the Youngs should not be charged fees that would not have been incurred but for**

**the carelessness and mistakes of Merlin Law Group, P.A. and its attorneys and staff. Furthermore, Plaintiffs do not believe they should be charged for fees associated with Plaintiffs' experts, all of which were stricken as a direct result of the carelessness of Ms. Claverol and/or Merlin Law Group, P.A.**

The fees being sought by Merlin Law Group, P.A. associated with the subject mistakes (and experts which were excluded) total $21,392.50 (based on 1.8 hours spent by Ms. Fortson, 1.9 hours spent by Ms. Niven, 39.3 hours spent by Ms. Claverol, and 19.6 hours spent by Mr. Tyler). For ease of reference, the associated time entries have been listed on Exhibit "D."

### b. DAMAGES SUSTAINED AS A RESULT OF ATTORNEY MISTAKES

Pursuant to Florida law, the quantum meruit value of Merlin Law Group, P.A.'s services must be reduced by the damages which the Youngs incurred due to the actions and inactions of Merlin Law Group, P.A. and its attorneys and staff. See Kushner v. Engelberg, Cantor & Leone, P.A., 750 So. 2d 33 (Fla. 4th DCA 1999). At the very least, the Youngs have incurred damages in the form of costs associated with Plaintiffs' experts as they received absolutely no benefit from such experts due to the aforementioned carelessness and mistakes of Merlin Law Group, P.A. and its attorneys and/or staff. Those costs total $56,484.00, which should either reduce the amount owed to Merlin Law Group, P.A. for attorney's fees or be excluded from the costs being sought by Merlin Law Group, P.A. The associated costs have been listed on Exhibit "E."

### 7. REDUCTION FOR FEES CHARGED WHICH HAVE NO SUPPORT

As noted, Merlin Law Group, P.A. filed no timesheets in support of its Charging Lien. The only evidence (other than the sparsely worded Affidavit of Michelle Claverol, Esquire In Support of Plaintiffs' Motion for Attorney's Fees and Reasonable Costs) Plaintiffs possess with regard to the amount being claimed for attorney's fees by Merlin Law Group, P.A. are the

timesheets attached as Exhibit "B," however, those only contain time entries for Mr. Tyler totaling 12.6 hours.  Ms. Claverol's affidavit asserts Mr. Tyler billed 32.2 hours, but Merlin Law Group, P.A. has failed to provide support for such hours (other than Ms. Claverol's Affidavit).  Consequently, Plaintiffs believe Mr. Tyler's time which is not accounted for or otherwise supported (totaling 12.6 hours) should be deleted in its entirety.

### 8.  REDUCTION FOR FEES ASSOCIATED WITH LEGAL ASSISTANTS

The subject retainer agreement between the Youngs and Merlin Law Group, P.A. provides for fees to be charged for paralegals.  However, the agreement is silent as to any charge for legal assistants.  As such, the time charged by Merlin Law Group, P.A. for its legal assistants (Ms. Horan, Ms. Engracio, and Ms. Beach) should be deleted in its entirety. See Flynn, 169 F. Supp. 2d at 1370.

### B.  COSTS

As noted above, Merlin Law Group, P.A. is seeking reimbursement of costs associated with Plaintiffs' experts, which were ultimately stricken by this Court due to the carelessness and mistakes of Merlin Law Group, P.A. and its attorneys and/or staff.  As a result, Plaintiffs have incurred costs for which they received absolutely no benefit.  **Because Merlin Law Group, P.A. and its attorneys and/or staff (through their carelessness and/or mistakes) functionally removed all value and benefit of Plaintiffs' experts, it should not be entitled to recover such costs, which again total $56,484.00.**

**It is important to note that Merlin Law Group, P.A. has not filed any document (other than the Affidavit of Ms. Claverol) that would prove it expended or is obligated to pay the claimed $62,552.51 in costs on behalf of the Plaintiffs.  As such and until it provides such documentation, Merlin Law Group, P.A. should not be entitled to reimbursement of**

**any such costs.**

## V. CONCLUSION

Merlin Law Group, P.A.'s Charging Lien (which consists of alleged attorney's fees in the amount of $81,472.00 and alleged costs in the amount of $62,552.51) totals $144,024.51.  For the many reasons noted above (and as outlined in Exhibit "C") and only once Merlin Law Group, P.A. provides documentary proof that it expended or is obligated to pay the claimed costs, the subject Charging Lien should be reduced to $6,067.66.  That figure assumes that after all of the proposed reductions in attorney's fees (other than reduction to account for Plaintiffs' damages), such fees should be $28,803.00.  That figure should be further reduced by Plaintiffs' damages in the form of costs related to their expert witnesses for which they received no benefit due to the actions and/or inactions of Merlin Law Group, P.A. and its attorneys and/or staff.   Those damages, in the amount of $56,484.00, exceed the amount due for attorney's fees, which naturally reduce the attorney's fees due to Merlin Law Group, P.A. to $0.00 (and leave a negative balance).  As a result, the only amount remaining due to Merlin Law Group, P.A. by Plaintiffs is $6,067.66 in costs (again, assuming Merlin Law Group, P.A. can substantiate such costs).

Alternatively, and for the many reasons outlined above (and as outlined in Exhibit "C") and only once Merlin Law Group, P.A. provides documentary proof that it expended the claimed costs, the subject Charging Lien should be reduced to $34,870.66.  That figure assumes that after all of the proposed reductions in attorney's fees (other than reduction to account for Plaintiffs' damages), such fees should be reduced to $28,803.00.  An additional $6,067.66 in costs (again, assuming Merlin Law Group, P.A. can substantiate such costs) should be added to that figure, representing the costs claimed to have been expended by Merlin Law Group, P.A. less the costs

associated with Plaintiffs' expert witnesses for which they received no benefit due to the actions and/or inactions of Merlin Law Group, P.A. and its attorneys and/or staff.

Plaintiffs request all such other relief as the Court deems necessary in this resolution of this case.

Respectfully submitted,

*s/ Donald M. Kreke*
DONALD M. KREKE
Florida Bar No. 861642
dkreke@krekelaw.com
KURTIS JAY KEEFER
FL. Bar No.: 0668011
kkeefer@krekelaw.com
The Law Offices of Donald M. Kreke
1450 Madruga Avenue, Suite 410
Coral Gables, Florida 33146
Telephone: (305) 669-0281
Facsimile: (305) 669-0299
*Attorney for Plaintiffs, Ray Young and Paula Young*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 3, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*s/ Donald M. Kreke*
DONALD M. KREKE, ESQ.

## SERVICE LIST

**YOUNG, et al versus LEXINGTON INSURANCE COMPANY**
**CASE NUMBER: 09-23370-CIV-SEITZ/O'SULLIVAN**
**United States District Court, Southern District of Florida**

Kurtis Jay Keefer, Esq.
kkeefer@krekelaw.com
The Law Offices of Donald M. Kreke
1450 Madruga Avenue, Suite 410
Coral Gables, Florida 33146
Telephone: (305) 669-0281
Facsimile: (305) 669-0299
Attorney for Plaintiffs
Method of Service: Notices of Electronic
Filing generated by CM/ECF

Michelle Claverol, Esq.
mclaverol@merlinlawgroup.com
Merlin Law Group, P.A.
2333 Ponce de Leon Boulevard, Suite 314
Coral Gables, Florida, 33134
Telephone: (305) 448–4800
Facsimile: (305) 448–2424
Method of Service: Notices of Electronic
Filing generated by CM/ECF

Jean Frances Niven, Esq.
jniven@merlinlawgroup.com
Merlin Law Group, P.A.
777 South Harbour Island Blvd., Suite 950
Tampa, Florida 33602
Telephone: (813) 229–1000
Facsimile: (813) 229–3692
Method of Service: Notices of Electronic
Filing generated by CM/ECF

William S. Berk, Esq.
wberk@berklawfirm.com
Berk, Merchant & Sims, PLC
2100 Ponce De Leon Boulevard, PH1
Coral Gables, Florida 33134
Telephone: (786) 338-2900
Facsimile: (786) 338-2888
Attorneys for Defendant
Method of Service: Notices of Electronic
Filing generated by CM/ECF

Patrick Betar, Esq.
pbetar@berklawfirm.com
Berk, Merchant & Sims, PLC
2100 Ponce De Leon Boulevard, PH1
Coral Gables, Florida 33134
Telephone: (786) 338-2900
Facsimile: (786) 338-2888
Attorneys for Defendant
Method of Service: Notices of Electronic
Filing generated by CM/ECF

21