UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 09-23370-CIV-SEITZ/O'SULLIVAN

RAYMOND YOUNG and
PAULA YOUNG,

    Plaintiff,

vs.

LEXINGTON INSURANCE COMPANY,

    Defendant.
_____/

## MERLIN LAW GROUP'S REPLY TO PLAINTIFF'S MEMORANDUM IN RESPONSE TO MERLIN LAW GROUP'S MOTION TO ENFORCE CHARGING LIEN

COMES NOW, the law firm of Merlin Law Group, by and through its undersigned counsel pursuant to the Order entered on March 28, 2011 and without making any admissions by omission against its own interest, hereby files this, its Reply to Plaintiff's Memorandum in Response to Merlin Law Group's Motion to Enforce Charging Lien stating as follows:

### UNDISPUTED RELEVANT FACTS

1.     On October 1, 2009, the Merlin Law Group filed a lawsuit on behalf of Raymond and Paula Young ("Young") against their insurer Lexington Insurance Company ("Lexington"), alleging that Lexington failed to pay the full amount of structural damages caused to the insured property by Tropical Storm Fay.[1]

2.     On December 8, 2010, after having litigated the issues and defenses raised in the pleadings through reciprocal written discovery, attendance at numerous depositions, and

---

[1] Prior to the lawsuit Lexington paid Young $121,835.51 in net benefits after applying the $72,750.00 deductible.

1

dispositive motion practice, Young terminated his contract for legal services with the Merlin Law Group.

2. December 14, 2010, the Merlin Law Group filed a Notice of Attorney's Fees and Costs Charging Lien (D.E. 71)

3. Young retained new counsel and on December 15, 2010, he settled his Tropical Storm Fay lawsuit against Lexington at a Settlement Conference before Magistrate Judge O'Sullivan. (D.E. 72).

4. Upon information and belief, Young accepted $400,000.00 in full and final settlement of his Tropical Storm Fay claim in exchange for a Release of all claims against Lexington.

5. Young requested payment as follows: 1) $127,509.92 for structural damages (Coverage A), 2) $75,000 for future Additional Living Expenses (Coverage D) and 3) $197,490.08 in statutory attorney's fees and costs, which were supported by the Merlin Law Group's time sheets and itemized costs. Lexington did not oppose the reasonableness of the attorney's fees and costs and issued separate checks accordingly.

6. At the Settlement Conference, Young presumably asserted the Merlin Law Group's fees and costs were reasonable to induce Lexington to pay every penny the Merlin Law Group spent in costs and every minute it had spent in prosecuting his case. Contrary to his assertions before this Honorable Court during the Settlement Conference, Young now opposes the reasonableness of the Merlin Law Group's attorney's fees and costs asking the Court to find that the Merlin Law Group was negligent in the prosecution of his claim and that the settlement outcome would have been different.

7. The record reflects that Young adequately settled the covered damages caused by Tropical Storm Fay (vis a vis those excluded by the policy) and that but for the Merlin Law Group's efforts, Young would not have succeeded.

8. Merlin Law Group's charging lien for adjusted attorney's fees ($68,606.00.) and incurred costs ($63,734.26) amounts to **$132,340.26** (See, Amended Affidavit of Michelle Claverol, Esq. attached as Exhibit "A" and Affidavit of Dennis Bailey, Esq. attached as Exhibit"B").

7. The Merlin Law Group respectfully request that this Honorable Court refrain from passing muster on Young's malpractice allegations and enter an Order establishing the reasonable amount of attorney's fees and costs that would otherwise satisfy the charging lien.

## MEMORANDUM OF LAW

### A. Enforceability of Merlin Law Group's Fees and Costs Charging Lien

Virtually every jurisdiction in the United States recognizes the right of an attorney to recover fees by imposing a lien on a judgment obtained by his efforts for his client. *Bernard Litman v. Fine, Jacobson, Schwartz, Nash, Block & England*, 517 So.2d 88, 90 (Fla. 3rd DCA 1987). Federal courts, although they recognize no common-law lien in favor of attorneys, give effect to the laws of the states in which they are held. *Webster v. Sweat*, 65 F.2d 109, 110 (5th Cir.1933); *Gottlieb v. GC Fin. Corp.*, 97 F. Supp. 2d 1310, 1311 (S.D. Fla. 1999). No statutes outline the requirements for valid attorney's liens in Florida. Rather case law acts as the sole guide for both attorneys and courts as to these liens. *Daniel Mones, P.A. v. Smith, Inc.*, 486 So.2d 559, 561 (Fla.1986).

The Florida Supreme Court set out four requirements to validly impose a charging lien. "[T]he Attorney must show: (1) an express or implied contract between attorney and client; (2)

3

an express or implied understanding for payment of attorney's fees out of the recovery; (3) either an avoidance of payment or a dispute as to the amount of fees; and (4) timely notice." *Daniel Mones, P.A. v. Smith, Inc.* 486 So.2d 559, 561.

The Merlin Law Group satisfied all the requirements to impose a charging lien in that: 1) it gave Young timely notice of the lien; 2) it entered into a written agreement with its former client; 3) Young had a specific understanding of the nature of the contract and his responsibility to pay attorney's fees and costs and 4) there is an avoidance and dispute over the amount of the attorney's fees and costs owed to the Merlin Law Group.

The written agreement between the Merlin Law Group and Young states, in relevant part, as follows (See also Exhibit C):

*********

### I.   RESPONSIBILITY TO PAY LAWYERS' FEE

A. **Lawyer's Fees:**

The CLIENT agrees to hire the LAWYERS in this matter on a contingency fee basis. The CLIENT agrees to pay the LAWYERS as set forth below:

   1.   10% of gross recovery of new monies if claims are settled with insurance company without litigation, plus costs.

   2.   33 1/3 % of the gross recovery of all sums if the contractual claims are denied and/or any type of litigation (i.e. Petition to compel appraisal) is required, plus costs.

   3.   40% of the gross recovery of all sums acquired from a bad faith cause of action, plus costs.

In the event of an appeal or if any court proceedings after judgment must be brought to collect the judgment, the fee shall be increased by an additional 5% of the amount paid. **If there is no recovery, there will be no charge for attorney's fees or costs.**

The CLIENT will pay these fees, even if this case is settled before a lawsuit is commenced. If CLIENT accepts a settlement without the LAWYERS' consent, then CLIENT will pay from the gross recovery, or otherwise, an attorney's fee

4

based upon the reasonable hours spent on this matter at an agreed hourly rate of $550.00/hour for partner attorneys, $450.00 to $350.00/hour for associate attorneys, and $125.00 to $100.00/hour for paralegals.

*******

In making this agreement to pay attorney's fees, CLIENT acknowledges that the relevant marketplace of attorneys with the experience to prosecute insurance claims and issues of bad faith is limited. CLIENT has made inquiry concerning the experience of LAWYERS and is satisfied that LAWYERS are recognized and experienced in insurance law. Further, CLIENT states that the funds needed to prosecute this case are beyond my personal means and that the advancing of costs on a contingent basis is the only practical way for me to properly pursue my rights.

*******

## II.   RESPONSIBILITY FOR COSTS AND EXPENSES

### A. **Advanced Costs:**

The CLIENT understands and acknowledges that certain costs will be required to be incurred in the prosecution of the claim and any related litigation. CLIENT expressly authorizes the LAWYERS to advance such costs as are reasonable and necessary for the prosecution of this matter. In the event of recovery, such advanced costs are to be paid from any recovery, after reduction of the amount gross recovery by the attorney's fees due. In the event that no recovery is had, or the recovery is insufficient to fully pay attorney's fees and costs, then the CLIENT shall have no further obligation to reimburse the LAWYERS for costs. As such, costs advanced become contingent upon recovery.

### B. **Expert and other expenses:**

In addition to court costs, deposition fees, service fees, court reporter fees, and other costs of litigation, the CLIENT also expressly understands the need for and expressly agrees to the retention of expert witnesses. Such experts may include, but are not necessarily limited to, insurance experts, actuaries, doctors, pharmacists, researchers, economists, accountants, or other persons who will be retained by the LAWYERS, to assist in the prosecution of the claims. Again, the expert expenses so advanced will be reimbursed by the CLIENT only out of any gross recovery, after calculation and payment of attorney's fees is made.

*******

## V.    RIGHT TO FIRE THE LAWYERS

> The CLIENT has the right to fire the LAWYERS at any time, even if the CLIENT has no reason. If the CLIENT fires the LAWYERS, CLIENT agrees to pay the LAWYERS the reasonable value of the LAWYERS' services and to promptly repay any costs or expenses advanced on behalf of the CLIENT in the handling of this matter.

********

In cases like this one, where an attorney has been discharged prior to the successful occurrence of a contingency, the Florida Supreme Court applies the modified *quantum meriut* rule. *See Rosenberg v. Levin,* 409 So.2d 1016, 1021-22 (Fla.1982). That rule allows a discharged attorney to recover "the reasonable value of his services rendered prior to discharge, limited by the maximum contract fee" as long as the contingency occurs. *Id.*

Having met the legal requirements to enforce its attorney's fees and costs charging lien, this Honorable Court should find that Young and Merlin Law Group entered into a valid contract to provide legal services in obtaining the insurance proceeds and that it was contemplated by both parties that the fees were contingent upon recovery.

The Court should also find that pursuant to the terms of the contract between Young and the Merlin Law Group, Young agreed to pay the Merlin Law Group the "reasonable value of the lawyer's services and promptly repay any costs or expenses advanced on his behalf", should he decide to terminate the contract. Since Young terminated the contract with the Merlin Law Group a week before the contingency occurred, we ask this Honorable Court to establish the reasonable value of the lawyer's services on a *quantum meriut* basis and require Young to pay any costs or expenses advanced on his behalf.

**B.   Computation of Reasonable Attorney's Fees Award**

In computing the reasonable value of a discharged attorney's services, the trial court should consider the totality of the circumstances surrounding the professional relationship between the attorney and client. Factors such as time, the recovery sought, the skill demanded, the results obtained, and the attorney-client contract itself will necessarily be relevant considerations. See, *Rosenberg v. Levin*, 409 So.2d 1016 (Fla. 1982). The Florida Supreme Court has further stated that "while the time reasonably devoted to the representation and a reasonable hourly rate are factors to be considered in determining a proper *quantum meruit* award, the court must consider all relevant factors surrounding the professional relationship to ensure that the award is fair to both the attorney and client," including the factors set forth in Rule 4-1.5(b) of the Rules Regulating the Florida Bar. See, *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz*, 652 So.2d 366, 369 (Fla.1995).

Rule 4-1.5(b) provides in pertinent part:

> (b)   Factors to Be Considered in Determining Reasonable Fees and Costs.
>
> (1) Factors to be considered as guides in determining a reasonable fee include:
>
>> (A) the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>>
>> (B) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
>>
>> (C) the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;
>>
>> (D) the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;

> (E) the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;
>
> (F) the nature and length of the professional relationship with the client;
>
> (G) the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and
>
> (H) whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client's ability to pay rested to any significant degree on the outcome of the representation.
>
> . . .
>
> (c)   Consideration of All Factors. In determining a reasonable fee, the time devoted to the representation and customary rate of fee need not be the sole or controlling factors. All factors set forth in this rule should be considered, and may be applied, in justification of a fee higher or lower than that which would result from application of only the time and rate factors.
>
> . . .

The record before this Court reflects that this case involved complex questions of insurance coverage and causation at the outset. Before the lawsuit, Lexington conceded that Tropical Storm Fay caused damages to the insured property. Lexington, however, denied coverage for the severe sinking/subsiding conditions observed at the property claiming that those conditions were unrelated to Tropical Storm Fay. While it was evident that Lexington underpaid the damages related to Tropical Storm Fay, it was unclear as to whether the catastrophic sinking conditions were related to the windstorm event.

Merlin Law Group filed a breach of contract lawsuit against Lexington. Young instructed the Merlin Law Group to retain his acquaintances as the forensic experts that would support his claim during litigation. Mr. Young's acquaintances evaluated the conditions at the property and

found that while Lexington failed to address certain damages that were caused by Tropical Storm Fay, the proximate cause of the subsiding/sinking conditions at the property were caused by a broken water line that had washed out the soil and caused the structure to subside. The Merlin Law Group advised Young that a significant portion of his damages were not caused by Tropical Storm Fay and that even if his experts would have been allowed to testify in court, his claim was considerably compromised by certain exclusionary language under the policy. (See, Affidavit of Michelle Claverol, Esq. and Lexington's Motion for Partial Summary Judgment, D.E. 51 & 52).

Lexington vigorously defended its position that the subsidence/sinking damages observed at the property were not caused by Tropical Storm Fay and that they were excluded under the Earth Movement exclusion of the policy. These complex causation questions as to the conditions observed at the property as well Lexington's relentless fight to concede entitlement to additional funds related to wind damages required hiring a law firm, such as the Merlin Law Group, that is well versed in insurance coverage analysis and experienced in this particular type of litigation.

Young alleges that the proper basis for compensating the Merlin Law Group is the *quantum meruit* value of the services rendered less any damages which the client incurred due to the Merlin Law Group's failure to timely serve expert witness disclosures. Young, however, forgets that the excluded experts were retained at his own insistence and that the excluded reports were unfavorable to his case in that it was found that most of the damages observed at the property were unrelated to Tropical Storm Fay and were otherwise excluded under the policy (Subsidence and Earth Movement). Young also forgets how uncomfortable it was to hear him trying to persuade his experts to change their opinions so that the reports would be more favorable to coverage. Fortunately, the experts never materially changed their opinion, but Young cannot now assert to

have been harmed by the untimely expert witness disclosure when he was fully aware that a significant portion of his damages were excluded under the policy.

In fact, the record reflects that Young adequately settled the damages related to Tropical Storm Fay as Lexington matched almost every penny of Young's original estimate to repair damages caused by the storm (and not related to earth movement or subsidence causes) (See, Lexington's Motion for Partial Summary Judgment D.E. 51 &52).[2] As a result thereof, this Honorable Court should not offset any amounts from the reasonable time expended for Young to receive the "tangible fruits" of the settlement of his Tropical Storm Fay claim, as alleged in the Complaint.

This Honorable Court should therefore calculate the Merlin Law Group's fees on a *quantum meruit* basis for services rendered up to the date of the discharge, but limited to the maximum contract fee (the contingency), as required by Florida Law. See, *Afrazeh v. Miami Elevator of America*, 769 So.2d 399 (Fla. 3rd DCA 2000); *Arabia v. Siedlecki*, 789 So.2d 380 (Fla. 4th DCA 2001).

a. **Determination of Reasonable Hourly Rates and Number of Compensable Hours**

The attorney and paralegal hourly rates vary based upon their experience, training and the rates charged from the inception of the contract to the present. The first step in the computation of a lodestar fee is determining the reasonable hourly rate. The party seeking attorney's fees bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates. *Fraser v. Security and Investment Corporation*, 615 So.2d, 841 (Fla. 4th DCA 1993); *Blum v. Stenson*, 465 U.S. 886, 895-96 n. 11, 104 S.Ct. 1541, 1547-48 n. 11, 79 L.Ed.2d 891 (1984) (a reasonable hourly rate is the prevailing market rate in the relevant legal

---

[2] Young's initial estimate to repair the damages related to Tropical Storm Fay was $475,975.84. The amount at issue subsequently increased during litigation to $2.2 million to include damages and conditions at the property that were unrelated to Tropical Storm Fay.

10

community for similar services by lawyers of reasonably comparable skills, experience, and reputation).

The second step in the calculation of the lodestar requires a determination as to the number of reasonable hours expended by counsel while exercising proper "billing judgment" to exclude those hours that would be unreasonable to bill a client or opposing counsel without reference to skill, reputation or experience. *Centex-Rooney Construction Co., Inc. v. Martin County*, 725 So.2d 1255 (Fla. 4th DCA 1999), *citing, Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

The burden of proving the reasonableness of the number of hours spent on a case rests with the party seeking fees. *Fraser v. Security and Investment Corp.*, 615 So.2d 841 (Fla. 4th DCA 1993); *United Bonding Insurance Company of Indianapolis, Indiana v. Presidential Insurance Co.*, 155 So.2d 635 (Fla. 2d DCA 1963); *Smith v. Austin Development Company*, 538 So.2d 128 (Fla. 2d DCA 1989).

To support a fee award, the applicant may also present expert testimony regarding the reasonableness of the fees to be awarded. *Nivens v. Nivens*, 312 So.2d 201 (Fla. 2d DCA 1975); *Saussy v. Saussy*, 560 So.2d 1385; (Fla. 2d DCA 1990); *Clark v. Squire, Sanders & Dempsey*, 495 So.2d 264 (Fla. 3rd DCA 1986); *Wiley v. Wiley*, 485 So.2d 2 (Fla. 5th DCA 1986); *Schwartz, Gold, Cohen, P.A., v. Streicher*, 549 So.2d 1044 (Fla. 4th DCA 1989).

The Affidavits of Michelle Claverol, Esq. and Dennis Bailey, Esq. support a finding that the reasonable and necessary number of hours expended by the Merlin Law Group in the handling of this matter were **219.78** for a total of **$68,606.00.** (See Attached Exhibits "A" and "B").[3] Having been discharged a mere seven (7) days prior to settling the lawsuit, it is clear that

---

[3] In order to address Young's concerns raised in his opposition to the charging lien, the

11

the Merlin Law Group's efforts were instrumental in obtaining a successful settlement.

a. **Incurred Costs**

The contract between the Merlin Law Group and Young is clear and unambiguous in requiring a former client to "promptly repay any costs or expenses advanced" in the handling of the matter upon termination with or without cause. Young claims that the Merlin Law Group should not be reimbursed for any costs related to the hiring or consultation with experts because the experts were ultimately stricken by the Court.

The Merlin Law Group incurred **$63,734.26** in reasonable and necessary on Mr. Young's behalf to bring suit against Lexington. (Copies of the Litigation Cost Listings and invoices are attached hereto and made a part hereof as Exhibits "A"). Mr. Young used this amount to induce Lexington to settle his demand for statutory attorney's fees and costs. If allowed to forego payment of any of the incurred costs, Mr. Young would receive an abhorrent windfall and therefore be unjustly enriched at Merlin Law Group's expense.

## CONCLUSION

Mr. Young holds a check in the amount of **$197,490.08** in statutory fees and costs which was secured a week after he discharged the Merlin Law Group as his counsel. The Merlin Law Group seeks **$132,340.26** in payment of the reasonable amount of attorney's fees and incurred costs that were necessary to advance Mr. Young's Tropical Storm Fay suit against Lexington in Federal Court, as shown by the supporting Affidavits and the record in the above-captioned suit.

Should this Honorable Court find in its wise discretion that the amount of fees and costs due to the Merlin Law Group is less than the **$132,340.26**, the Merlin Law Group respectfully requests

---

Merlin Law Group adjusted the hourly rate of its associate Michelle Claverol in spite of the contracted hourly rate.

that the difference be paid directly to Mr. Young and that it not inure to the benefit of Mr. Young's new counsel.

WHEREFORE, the law firm of Merlin Law Group, P.A. hereby requests that this Honorable Court enforce its charging lien and issue a Judgment of Fees and Costs in Favor of the Merlin Law Group.

MERLIN LAW GROUP, P.A.

/s/ Michelle Claverol
Michelle Claverol, Esquire
Florida Bar No.: 24623
2333 Ponce de Leon Boulevard, Suite 314
Coral Gables, Florida 33134
Tel: (305) 448-4800
Fax: (305) 448-2424
mclaverol@merlinlawgroup.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 4th day of April of 2011, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF. I also certify that the foregoing document is being served this day on: **Patrick Betar, Esq.**, Berk Merchant & Sims, PLC, 2100 Ponce de Leon Blvd., Penthouse I, Coral Gables, FL 33134, via transmission of Notices of Electronic Filing generated by CM/ECF and Kurt Keefer, Esq., Law Office Offices of Donald M. Kreke, 1450 Madruga Ave., Suite 410, Coral Gables, Florida 33146.

/s/ Michelle Claverol
Michelle Claverol, Esquire